DECISION.
{¶ 1} Plaintiffs-appellants Concrete Coring Co. and Edington Enterprises, Inc., filed a complaint against defendant-appellee Gerald Gantzer for breach of contract, misappropriation of trade secrets, breach of fiduciary duty, and tortious interference with a contract. In paragraph one of the complaint, it was alleged that Edington Enterprises, Inc., was the sales division of Concrete Coring, but throughout the complaint there was only a reference to a breach of duty owed to Concrete Coring.
{¶ 2} Gantzer filed an answer and counterclaim. In the counterclaim, Gantzer requested compensatory damages, punitive damages, attorney fees, and costs arising from the failure to pay him certain commissions and vacation payments.
{¶ 3} In April 2001, Gantzer's deposition was taken and subsequently made a part of the record. In portions of the deposition, Concrete Coring and Edington were referred to as one business entity, while in other parts Concrete Coring and Edington were referred to as separate entities. In his deposition testimony, Gantzer admitted that he had signed a confidentiality and non-compete agreement on October 1, 1991, the day he was hired by Concrete Coring. Gantzer stated that he had begun working in the Edington sales department in 1991. Gantzer further testified that he had quit his job at Concrete Coring on February 19, 2001. Gantzer testified that his current employer, Jiffy, was a competitor of Concrete Coring and Edington, and that Jiffy conducted business within a 50-mile radius of Edington's and Concrete Coring's office. Gantzer testified that he had access to written customer lists for Edington and that he knew about Concrete Coring's cost and profit information. Finally, Gantzer testified that he did not think that the confidentiality and non-compete agreement was in effect when he quit his job due to subsequent modifications in salary and commissions that did not contain a non-compete clause.
{¶ 4} In August 2001, Gantzer filed a motion for summary judgment against the "plaintiffs." In support of his motion for summary judgment, Gantzer asserted that he was employed by Edington Enterprises and was not bound by the confidentiality and non-compete agreement that he signed in 1991 with Concrete Coring. He further maintained that Concrete Coring and Edington Enterprises (which, according to Ganzer, was also known as Edington Sales Company) were "separate and distinct corporations." (Hereinafter, to avoid confusion, we refer to Edington Enterprises, Inc., and Edington Sales Co. together as "Edington.") To substantiate his claim, Gantzer provided his own affidavit and nine exhibits.
{¶ 5} In the affidavit (dated August 23, 2001), Gantzer stated that he had been employed as a sales representative with Edington between 1991 and February 2001, selling "tools, drill bits, and other products to building contractors and developers." Gantzer further explained that Concrete Coring provided concrete-related services, and that, as a sales representative, he did not call on customers of Concrete Coring and had no responsibility to Concrete Coring. Gantzer also stated that he did not have access to Concrete Coring's records and that he was not employed by it. Finally, Gantzer indicated that the reason why his annual W-2 tax forms, salary checks and 401(k) plan all bore the name of Concrete Coring was because the "salaries of [Concrete Coring and Edington] were paid through a single payroll service."
{¶ 6} In response to the motion for summary judgment, Concrete Coring and Edington maintained that Gantzer's own affidavit created a genuine issue of material fact about whether Gantzer was an employee of Concrete Coring. And Concrete Coring and Edington argued that Gantzer's motion for summary judgment did not address all of their claims because it focused only on the issues relating to the covenant not to compete.
{¶ 7} In a subsequent memorandum, Gantzer explained that summary judgment should be granted as to all claims because he could not be liable for breach of contract, breach of fiduciary duty or tortious interference absent an enforceable contract with Edington. Further, Gantzer stated that, as Edington's employee, he could not have misappropriated Concrete Coring's trade secrets because he had no knowledge of them.
{¶ 8} Thereafter, Concrete Coring and Edington filed a motion for partial summary judgment, arguing that because Gantzer had admitted in his deposition that he had been competing with Concrete Coring since leaving its employ in 2001, he had violated the confidentiality and non-compete agreement. A copy of the confidentiality and non-compete agreement and an affidavit of Harold Edington were attached to the motion.
{¶ 9} In the affidavit, Mr. Edington stated that Gantzer had been hired as an employee for Concrete Coring on October 1, 1991, and that Gantzer had voluntarily terminated his employment in February 2001. Mr. Edington further testified that Gantzer had acted as a sales representative for Concrete Coring and had access to confidential customer and supplier information, and that Gantzer had called on Concrete Coring customers. Mr. Edington attested that Gantzer was provided with a business card identifying Edington Sales Company as a division of Concrete Coring Company. Finally, Mr. Edington testified that Gantzer had been calling on customers of Concrete Coring and Edington within a 50-mile radius of Concrete Coring's office since terminating his employment with Concrete Coring.
{¶ 10} In response to Concrete Coring and Edington's motion for partial summary judgment, Gantzer again argued that he was not bound by the confidentiality and non-compete agreement because Concrete Coring had not employed him. Further, Gantzer argued that the agreement imposed unreasonable restraints on him in violation of Ohio law.
{¶ 11} In granting summary judgment for Gantzer on all of the claims, the trial court determined the following:
{¶ 12} "Having thoroughly examined the record in this matter, it is the opinion of this Court that no material issues of fact exist, and that, in construing the evidence presented most strongly in favor of the plaintiffs, reasonable minds could only conclude that Defendant was not an employee of Plaintiff, but an employee of Edington Enterprises, Inc., a separate corporation. It follows, therefore, that defendant Gerald Louis Gantzer breached no duty owed to said plaintiff. In light of such, and pursuant to Ohio Rule of Civil Procedure 56(C), Defendant Gerald Louis Gantzer's Motion for Summary Judgment is well taken and hereby granted."
{¶ 13} After Gantzer voluntarily dismissed his counterclaim without prejudice, Concrete Coring and Edington filed a timely notice of appeal.
{¶ 14} In their sole assignment of error, Concrete Coring and Edington maintain that the trial court erred in granting summary judgment to Gantzer because a genuine issue of material fact existed as to whether Gantzer was an employee of Concrete Coring. We agree.
{¶ 15} We conduct a de novo review of the entry of summary judgment.[1] Pursuant to Civ.R. 56, summary judgment is appropriate when, with the evidence viewed in the light most favorable to the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party.[2] To determine what constitutes a genuine issue, the court must decide whether the evidence presents a "sufficient disagreement to require submission to a jury," or whether it is "so one-sided that one party must prevail as a matter of law."[3]
The moving party bears the burden of pointing out in the record where it is shown that no genuine issue of material fact remains.[4] Once the moving party satisfies its burden, the nonmoving party has the reciprocal burden of setting forth specific facts demonstrating that a genuine issue exists to be litigated.[5]
{¶ 16} In his answer to the complaint, Gantzer admitted that Edington Enterprises was a sales division of Concrete Coring, with both entities operating out of the same principal place of business. Gantzer also admitted, "Concrete Coring hired Gantzer as a sales representative on or about October 1, 1991. Upon his employment, he executed a Confidentiality and Noncompete Agreement, a true and accurate copy of which is attached hereto as Exhibit A and incorporated by reference herein." And Gantzer admitted that "[a]fter he left Concrete Coring, Gantzer began contacting Concrete Coring's customers and suppliers on behalf of Jiffy, and offered to sell products on behalf of Jiffy that competed with products distributed by Concrete Coring, within a 50 mile radius of Concrete Coring's business address."
{¶ 17} Generally, the effect of a judicial admission is to remove the issue from material dispute.[6] However, a judicial admission can only be a statement of material and competent fact, not a statement of a legal conclusion.[7] Here, Gantzer's answers did not provide information sufficient to establish an unambiguous admission that he only worked for Concrete Coring between 1991 and 2001.[8] Nevertheless, Gantzer's admissions, coupled with his affidavit and deposition testimony, created a genuine issue of material fact.
{¶ 18} It is well established that where a moving party submits conflicting affidavit statements in support of the motion for summary judgment, which are inconsistent with his prior deposition testimony, summary judgment is improper because the inconsistencies raise a credibility question that creates a genuine issue of material fact for the jury to resolve.[9] Gantzer submitted such conflicting evidence raising credibility concerns in this case.
{¶ 19} In Gantzer's deposition testimony, he seemed to concede that he worked for both Concrete Coring and Edington as a sales associate. He testified that he had access to Concrete Coring and Edington's sales information, and that he may have relayed that information to their competitor Jiffy. One month later, Gantzer denied working for Concrete Coring in his affidavit, stating that he had only been an associate for Edington. Further, he attested that he had no access to Concrete Coring's confidential information. The discrepancy between Gantzer's own deposition testimony and his affidavit filed in support of his motion for summary judgment highlighted the confusion over Gantzer's employment status and called into question Gantzer's credibility. Accordingly, summary judgment was not appropriate because Gantzer had failed in meeting his initial burden of demonstrating that there was no genuine material fact regarding who had employed him between 1991 and 2001.
{¶ 20} Additionally, Concrete Coring and Edington presented evidence raising a genuine issue of material fact. In Mr. Edington's affidavit, he stated that Concrete Coring had employed Gantzer as a sales representative in 1991 and that Gantzer had voluntarily terminated his employment in 2001. Viewing this in the light most favorable to Concrete Coring and Edington, we hold that evidence was presented creating a genuine issue of material fact as to whether Concrete Coring had employed Gantzer between 1991 and 2001, and whether the confidentiality and non-compete agreement signed by Gantzer in 1991 was enforceable.
{¶ 21} In sum, we hold that discrepancies between Gantzer's own evidence raised credibility concerns that could not be decided on a motion for summary judgment. Further, Mr. Edington's affidavit raised a genuine issue of material fact relating to Gantzer's employment status. For these reasons, we hold that Gantzer's motion for summary judgment was improperly granted, and we, therefore, sustain Concrete Coring and Edington's assignment of error.
{¶ 22} The judgment of the trial court is, accordingly, reversed, and this cause is remanded for further proceedings in accordance with law.
Reversed and cause remanded.
Painter, P.J., Sundermann and Winkler JJ.
[1] See Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241.
[2] See id. Temple v. Wean United (1977), 50 Ohio St.2d 317, 327,364 N.E.2d 267.
[3] Turner v. Turner (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, citing Anderson v. Liberty Lobby, (1986), 477 U.S. 242, 251-252,106 S.Ct. 2505.
[4] See Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107,662 N.E.2d 264.
[5] See id. at 293. See, also, Civ.R. 56(E); Vahila v. Hall,77 Ohio St.3d 421, 429, 1997-Ohio-259, 674 N.E.2d 1164.
[6] See Dennis v. Ford Motor Co. (1997), 121 Ohio App.3d 318, 323,699 N.E.2d 993.
[7] See Midwestern Indemnity Co. v. Manthey (1990), 68 Ohio App.3d 539,542, 589 N.E.2d 95, quoting Faxon Hills Constr. Co. v. United Bhd. ofCarpenters Joiners of America (1958), 168 Ohio St. 8, 151 N.E.2d 12, paragraph one of the syllabus.
[8] See, e.g., Everett v. Cinque (Aug. 31, 2000), 10th Dist. No. 99AP-1409.
[9] See Turner v. Turner, supra, at paragraph one of the syllabus.